JESSIE F. CLARK, Appellant, v. IOWA-DES MOINES NATIONAL BANK & TRUST COMPANY, Appellee.

No. 43649.

SEPTEMBER 21, 1937.

REHEARING DENIED JANUARY 21, 1938.

Gamble, Read & Howland, for appellant.

Brammer, Brody, Charlton & Parker, for appellee.

ANDERSON, J.—For convenience in writing this opinion the plaintiff, Jessie F. Clark, will be designated as appellant, and the defendant, Iowa-Des Moines National Bank & Trust Company, will be designated as appellee. Both parties have appealed from a finding and decree of the trial court. The record is very extensive, probably the most voluminous of any record ever submitted to this court. It includes a certified transcript consisting of 21,593 pages. The abstract and amendment thereto cover 5,316 printed pages; the appellant's argument approximately 600 printed pages; and the appellee's argument 1,900 printed pages. This together with over 8,000 exhibits. We have thus noted the extensiveness of the record for the purpose of indicating the arduous and almost unattainable effort necessary to familiarize ourselves with the facts and issues involved. Necessarily all members of this court have not been able to read this record but a majority of the court have done so to an extent sufficient to familiarize themselves with the record.

▐▌▐▌ The case has to do with financial transactions approximating $7,000,000 and extending over a period of six or seven years. An attempt to make a detailed statement of the facts and issues would not serve as a precedent, would be of no advantage to the profession, and would be of such length that its publication would be unwarranted. Likewise it would serve no good purpose to enter into an analytical discussion of the testimony of witnesses and the very voluminous records, photographs, audits, and documentary evidence.

The record discloses a history of stock market dealings and operations and transactions in securities carried on for a period of years by Jessie F. Clark and Philo D. Clark, her husband. It is claimed by the appellant that her husband, Philo D. Clark, was not her agent with unlimited and unrestricted authority in the transactions involved and that the appellee bank knew he was not a general agent clothed with unlimited and unrestricted authority to deal and carry on transactions involving cash and securities of his wife, Jessie F. Clark, and that the defendant bank was acting for her in a fiduciary relationship which it violated in permitting Philo D. Clark to withdraw securities of his wife deposited with the defendant bank and use them and cash of his wife in various financial and stock market speculations. And plaintiff asked an accounting for various items of cash and securities so used by her husband in such transactions, and from

which a very appreciable loss resulted. The trial court, after hearing the making of the record which took eight or ten months, and after reviewing that record for several months after the final submission of the case, prepared and filed its finding and opinion dismissing plaintiff's claims and petition except as to one item which we will hereafter more particularly notice, and on this item the court entered judgment against the appellee bank in approximately the sum of $11,000. No better brief statement of the matters at issue can be made than was made by the trial court and we quote quite extensively therefrom as follows:

"The result of that review is that the court feels that the impression made upon the court during the trial and on the introduction of the testimony is amply sustained in this record, and that is, that the plaintiff, Mrs. Clark was, during all of the time of the operations of her husband Philo D. Clark, in his dealings on the stock market, advised of what he was doing and that the said operations were for the mutual benefit and interest of both the plaintiff and her husband; that she was conversant, in a general way, with the fact that he was dealing with the various brokerage houses and was using the securities, which had been placed in the hands of the bank under the agency contracts in the manner that the record discloses they were used and that the plaintiff acquiesced therein, and as long as the operations proved profitable, she willingly accepted the benefits and they were reflected in her bank account with due regularity, as evidenced by the records produced and introduced in the evidence in the trial. It may be true that the plaintiff did not know all of the specific details of the various accounts, but the court is convinced that she did have sufficient general knowledge of the picture and the set-up, as it existed at the time of the disappearance of her husband, and the negotiations with the representatives of the Iowa-Des Moines National Bank in February of 1931, to advise her of the general situation and all that was requisite at that time, upon the part of the representatives of the bank, was that the bank's representatives disclose the details sufficient to advise the plaintiff of the different securities that were on deposit with the various brokerage accounts and with the bank, as collateral to the various brokerage accounts and the obligations at the bank.

"The court is convinced that Mrs. Clark knew at that time and had for some considerable time previous thereto of the note

obligations at the bank and the court is of the opinion that all of the said note obligations at the bank were the joint obligations of Mrs. Clark and her husband. The court may say that in a general way, the court has been led to these conclusions not by any one specific item of evidence, but by the cumulative force of the evidence as disclosed by the record, showing definite items of knowledge upon the part of the plaintiff of the existing set-up, and knowledge of what her husband had been doing in connection with the handling of the operations on the stock market for the joint benefit of the plaintiff and her said husband, including the borrowing of money at the bank and the use of the notes bearing plaintiff's signature in connection therewith.

"These various items of knowledge, as disclosed by the record, including written memorandum, some of which had been obliterated when produced in court by ink éradicator and the original entries developed by modern photography, show conclusively, at least to the court, that Mrs. Clark had knowledge of the various deals including knowledge of the existence of the notes at the bank and the payment of interest thereon, and her conversations in the various sessions in February of 1931, with the representatives of the bank and with Mr. and Mrs. Carey, Mrs. Hayes and Mr. Reese, convince the court, that Mrs. Clark was conversant with the true situation and that all that was necessary for her to learn in addition to the general picture that she was then possessed of, was the various items of securities that were up as collateral for the securing of the various obligations with the brokerage houses and with the bank itself. All of these items, with the exception of the Pulis account, which will be treated of later in this opinion, were all frankly disclosed to Mrs. Clark by the representatives of the bank and were checked over in detail by Mrs. Clark's representatives and friends, Mr. and Mrs. Carey.

"The court is unable to find that in those negotiations, with the exception of the Pulis account item, was there any concealment from Mrs. Clark of anything that had an important bearing upon the picture as it then existed of which she was not conversant in a general way.

"The court therefore is of the opinion, and it is the conclusion of the court that in the negotiations in February of 1931, between Mrs. Clark and her representatives, principally the Careys, and the representatives of the bank, there was no concealment upon the part of the bank; that it was in no manner

culpable or guilty of any act or omission of any duty upon which fraud or rescission of the settlement could be predicated, except as regards the Pulis account, and that in the settlement, Mrs. Clark, insofar as any of the items except the Pulis account is concerned, was in fact settling her own obligations with the bank and the brokerage companies; rather so far as the brokerage companies were concerned, she was settling the accounts which were made by her husband with said brokerage companies for and on her behalf, as an interested party in the dealings with said brokerage houses.

"It is claimed by the plaintiff that the notes which originally were given for the Frances Clark items were in no manner the obligation of the plaintiff. The record shows that at least one of the items ostensibly purchased for Frances Clark, and for which her note was given jointly with that of her father for the borrowed money, was subsequently sold at a profit and the record shows that all of the profit was immediately deposited to and reflected in the account of the plaintiff and so far as the record discloses, there has never been any surrender or accounting by the plaintiff to the said Frances Clark. This would indicate that so far as the plaintiff was concerned, the Frances Clark items were resorted to for the purpose of ostensibly bringing about a profit for the benefit of Frances Clark, but when the profit was made the plaintiff forgot the obligation to Frances Clark and treated the item as her own property.

"With respect to the other notes of Frances Clark which were ultimately merged in the joint obligations which were in existence at the time of the negotiations and settlement in February of 1931, the court is of the opinion from the record, that the plaintiff was fully conversant with what had transpired with respect to the merging of those items in different notes held by the bank as a joint obligation of the plaintiff and her husband Philo Clark, and that she was fully conversant with that merging at the time of the negotiations in the settlement in February 1931.

"The plaintiff also contends that there was some $2,000.00 merged in the large note, which, it is claimed was the sole obligation of Philo Clark, being the $2,000.00 sent to one Miller at Red Oak, in connection with the Stair notes. The record shows that with respect to the Stair notes, the income from said notes was reflected in the account of the plaintiff and was in the income tax reports referred to as a part of her income, and the

court is of the opinion that the said Stair notes was looked upon and recognized by the plaintiff as a part of her property. In any event, on this item, the court is convinced that so far as the bank officials are concerned, when the renewal of the large note occurred and the same was increased to enable the plaintiff's husband to remit by cashier's check to the said Miller, the said $2,-000.00, there was nothing in that transaction which differentiated it from the numerous other items that had theretofore occurred between the said Philo Clark as the representative of the plaintiff and the bank officials to advise the bank that here was an item that was of a different status than the other items which the court is satisfied represented the joint obligations of the plaintiff and her said husband, and that so far as the said Miller item is concerned, the bank was justified in assuming that that was a part of the joint operations of the plaintiff and her said husband, and that there was no fraudulent concealment by the bank on this item in the negotiations between the plaintiff, her representatives and the bank and its representatives in February of 1931.

"In other words, the court is of the opinion that the settlement worked out and agreed upon in February 1931, between the bank and the plaintiff and her representatives, Mr. and Mrs. Carey, with the exception of the Pulis item, was arrived at from a full, fair statement by the bank officials of all of the details that the bank was required to disclose to the plaintiff, taking into consideration the general knowledge which the plaintiff was possessed of at that time of all that had transpired, leading up to the existence of the notes and the obligations represented thereby.

"As to the additional collateral which was put up with the bank by the plaintiff under the terms of said settlement, as evidenced by the writing of February 14, 1931, whereby there was deposited with the bank certain securities as additional collateral for the security of the said notes, the court is of the opinion that there was no duress exercised by the bank in connection with the execution of that instrument. As the court has indicated, the obligations at the bank were the obligations of the plaintiff and it was within the legal right of the bank to use the collateral which was then on deposit as security for said obligations in the liquidation of said obligations, unless the bank was satisfied by additional security, and to disclose that attitude in

the manner in which it was disclosed, does not, in the judgment of the court constitute duress.

"Furthermore, so far as duress is concerned, the record shows that the plaintiff did not act wholly upon the confidence relied upon by her in the bank. On the contrary, she asked for and was granted time to consider the matter and to procure the attendance and advice of her friends, Mr. and Mrs. Carey, and she had the advice of Mr. and Mrs. Carey, both of whom were thoroughly skilled in business matters and particularly in connection with the value of securities and the plaintiff only acted after Mr. and Mrs. Carey had made a complete analysis of the situation and had given the plaintiff the benefit of their business judgment in regard to what she should do in the premises.

"These additional securities, by the allegations of the plaintiff's petition, and as disclosed by the record, were deposited with the bank as additional collateral security to said notes. Those notes represented the obligations of the plaintiff and there was no overreaching, in the judgment of the court, by the bank, in requesting and in procuring the deposit of said securities as additional collateral to said obligations.

"The court is therefore, of the opinion and it is the judgment of the court that the settlement made by the plaintiff in the negotiations during February, 1931, was, except as to the Pulis item, a valid and legal settlement and binding upon the plaintiff, unless there is in the Pulis account item, sufficient fraud, which, in its ramifications can be held to permeate the whole situation.

"As already pointed out, the plaintiff by her conduct, acquiescence and cooperation in the dealings of her husband, was and is, in the judgment of the court, bound by his acts in connection with the said dealings, because, in the judgment of the court, they were had for their joint benefit and that the bank was justified in relying upon the general agency character of plaintiff's husband in all said dealings to act upon his instructions with respect to the loaning of money for said operations and the deposit of the securities with the bank and with the several brokerage houses as collateral.

"But the question remains, was such general authority so evidenced by the conduct, acquiescence and cooperation of the plaintiff, sufficient to justify the bank in permitting the use of the securities deposited with the bank under the several agency

contracts in connection with the private speculations of Victor Pulis, the assistant trust officer of the bank.

"The court is of the opinion that the general agency of Philo D. Clark, as evidenced by the conduct, acquiescence and cooperation of the plaintiff in his various dealings over the period of years covered by said dealings, was not sufficient to justify or authorize the bank to permit the use of the securities placed in the hands of the bank under the agency contracts for the securing or collateraling of the Victor Pulis private speculation.

"As soon as the suggestion was made by Philo Clark of the use of any of the joint securities for the Pulis private account, it was apparent to the bank, through the knowledge of its officer, Mr. Pulis, that Philo Clark was exceeding the authority of his general agency. The plaintiff certainly cannot be bound, unless there is brought home to her sufficient knowledge of the doings of Clark with respect to the Pulis account to establish consent. There is an entire absence of such showing in this record and the court is of the opinion that the bank, in permitting the use of said securities for the Pulis account, violated its obligation as a fiduciary of the plaintiff.

"This being true, does that violation and the concealment, which is admitted to have occurred in the negotiations between the plaintiff and the representatives of the bank in February of 1931, in legal effect, justify a rescission and cancellation of the entire settlement agreement? The court is of the opinion that it does not.

"Concealment was confined wholly to this Pulis account. There was in addition, misrepresentation in that Mr. Pulis represented to Mrs. Clark that the account was held in his name for the convenience and benefit of Mr. Clark, so that we have a concealment and misrepresentation, but this, in the judgment of the court, is not sufficient to justify the court in determining that the entire settlement is to be cancelled and set aside and a new adjustment had in a general accounting.

"The court is unable to see wherein the plaintiff is injuriously affected by the concealment and misrepresentation as to the account of Pulis, insofar as the balance of the settlement is concerned. There is nothing in connection with the Pulis account item which, in the judgment of the court, can be said to have a direct bearing upon the other details of the settlement. In other words, as the court has pointed out, it is the judgment

of the court that the brokerage accounts in the name of Philo Clark were existent for the joint benefit of the plaintiff and said Philo Clark; that the deposit of the securities as collateral to those various accounts were legal, insofar as the bank was concerned, and confessedly they must have been legal insofar as the brokerage houses were concerned. The note obligations with the bank, were the obligations of the plaintiff, as the court has found and determined; the Pulis account stands separate and alone and has no bearing upon what was done in connection with the other items upon which the plaintiff was legally bound.

"The plaintiff is entitled to be made whole in her damages so far as the effects of the fraud are concerned, but certainly the court would not be justified in holding the bank accountable for the securities that were up as collateral with the bank prior to the February 1931 settlement. Neither could the court hold the bank accountable for the securities that were taken down from the various brokerage houses by the arrangement and settlement with the bank. All that the bank did with regard to the items on deposit with the brokerage houses, was to agree to advance the money to enable the plaintiff to recover some and possibly all of such securities from such brokerage houses. And as to the deposit of additional securities under the writing of February 14, 1931, as collateral to the notes at the bank, as already pointed out in this opinion, the bank was within its rights in demanding such additional collateral on said notes and it was a matter for the plaintiff to determine in the exercise of her judgment in the light of the circumstances and the advice of her counsellors, Mr. and Mrs. Carey, as to what she should do with regard to the deposit of such additional security as collateral. All that occurred with respect to the plaintiff by way of damages in connection with the concealment and misrepresentation as to the Pulis account, was covered by such damage as she could show from the misuse of the securities as collateral to the Pulis account and the expenses to her of recovering the securities and the court is unable to see wherein such items of damages have any relation to the other items involved in the settlement, all of which, as found by the court, were the obligations of the plaintiff.

"The court is therefore of the opinion that the misrepresentation and concealment, with respect to the Pulis account, does not affect the settlement as to the other items, all of which were

obligations of the plaintiff, or for which her securities had been legally deposited as collateral for the payment thereof.

 ''The court feels that this case is one which falls within the rule as stated by Story in his work on Equity Jurisprudence.

''In some cases, as of gross fraud, or gross mistake, or undue advantage or imposition, made palpable to the court, it will direct the whole account to be opened, and taken de novo. In other cases, where the mistake, or omission, or inaccuracy, or fraud, or imposition is not shown to affect or stain all the items of the transaction, the court will content itself with a more moderate exercise of its authority. It will allow the account to stand, with liberty to the plaintiff to surcharge and falsify it; the effect of which is to leave the account in full force and vigor, as a stated account, except so far as it can be impugned by the opposing party, who has the burden of proof on him to establish errors and mistakes. Sometimes still a more moderate course is adopted, and the account is simply open to contestation as to one or more items which are specially set forth in the bill of the plaintiff as being erroneous and unjustifiable, and in all other respects it is treated as conclusive. Citing 1 Story Eq. Jr. Sec. 523.

 ''This brings us to the consideration of the contention of the defendant, that the agency contracts were all joint in their terms and that the bank, having settled with one of the joint parties (Philo Clark) it was binding upon both.

''A reading of the three agency contracts, convinces the court that they are joint in their terms insofar as the principals, the Clarks, are concerned. That is, the agency created by the contracts was the result of the joint act or cooperation of Jessie F. and Philo D. Clark, and the deposit of the securities was done jointly, but there is nothing in the agency contracts, which would justify the court in holding that the effect of the said agency contracts was to vest in the Clarks jointly, the title to the properties deposited with the bank. In other words, in the opinion of the court, there is nothing in these contracts, which would deny to either the plaintiff or her husband, the legal right to show that certain securities covered by the contracts were, as a matter of fact, their individual property, but so far as the deposit with the bank is concerned, it was a deposit jointly, and it required, in the judgment of the court, the joint cooperation of the principals, the Clarks, in the settlement with the agent under the contracts. That is, the bank was required to settle with Mr. and Mrs. Clark

jointly, or with one of them as the authorized legal representative of both."

The opinion of the trial court further discusses the so-called "Pulis Account", finds the bank liable thereon and enters judgment against the bank for approximately $11,000; also dismisses plaintiff's petition, except as to the Pulis account, and divides the costs equally between the appellant and appellee. The court also further found and determined in its decree that as to an item of $7,645, representing a balance due on Mrs. Clark's notes to the bank on the settlement of February, 1931, there would be and was no adjudication.

It is our conclusion, without further amplifying or analyzing the record, that the court's opinion and finding has ample support in the record and is hereby approved, except as to the Pulis account which we will hereafter notice, and except as to the order assessing the costs.

Defendant filed no cross-bill for the balance due upon Mrs. Clark's notes of $7,645, and interest. However, should the judgment on the Pulis account be permitted to stand defendant would be entitled to an offset in the amount due on Mrs. Clark's notes, with interest, but as we have concluded there should be no liability on the Pulis account item then plaintiff is denied an accounting and there could be no judgment on the amount due on Mrs. Clark's notes unless claimed in a cross petition.

■■■ Now, as to the Pulis account. It appears that Pulis, who was an assistant trust officer of the defendant bank, opened a brokerage account with the Babcock-Rushton Company in his own name using as collateral to such account certain securities and bonds belonging to the Clarks. Such securities so used by Pulis were in the safety deposit box of the Clarks in the defendant bank, both Mr. and Mrs. Clark having keys and access to said box. The securities concededly used by Pulis were taken from the safety deposit box by Philo D. Clark and personally deposited with the Babcock-Rushton Company as collateral to the Pulis account or, were delivered personally by Clark to Pulis for the purpose of collateraling the Babcock-Rushton Company account. There appears to have been no duty owed by the bank in connection with such securities other than to see that only those who were authorized and had access to the safety deposit box took securities therefrom. As we have indicated, Philo D.

Clark had the key to said box and access thereto and was authorized to resort thereto, and did resort thereto, not only to obtain the securities deposited in the Babcock-Rushton Company account but to obtain securities for other purposes.

The trial court found that under a so-called agency agreement between the Clarks and the bank dated May 2, 1929, that the bank acknowledged the possession and receipted for $5,000 of Republic of Colombia bonds to be held by the bank as an agent or fiduciary or as collateral to the Clarks' indebtedness to the bank, and upon such finding based its decree finding against the bank for the amount of these bonds and possibly some other securities. These bonds and possibly some other items of security were deposited with the Babcock-Rushton Company as collateral to the brokerage account opened by Mr. Pulis, and the appellant claims and the trial court found that there was a conversion of these bonds and securities by Pulis, the assistant trust officer of the bank, and that the bank should account to the plaintiff therefor. We do not think such finding is warranted by the record. There is no testimony supporting plaintiff's claim that these bonds were included in the 1929 agency agreement. Mrs. Clark claims that she did not know at the time of the 1929 agency agreement, or at any other time, that these bonds were deposited as collateral to the Pulis account, and she does not testify directly that these bonds were mentioned in any list of securities which were attached to the 1929 agreement. There is no testimony supporting any claim of fraud or deception practiced upon Mrs. Clark at the time of the making of the 1929 so-called agency agreement. The 1929 agency agreement was closed and terminated in January, 1930, by Philo Clark, and at that time these bonds were in the possession of the brokerage company. Mrs. Clark testifies that she never was asked to and never did sign or deliver to the bank or the trust department any authorization pertaining to the placing of the securities in the safety deposit box. She further testified that she accepted what her husband told her as to what he and the trust department had done without inquiring of anybody at the bank concerning it. She further testified that she knew, from Mr. Clark's statement, that he had placed these and other securities in the safety deposit box; that she never took them down to the bank or placed them in the safety deposit box herself. Mrs. Clark knew in February, 1931, that these bonds were on deposit with the brokerage company, and in her settle-

ment with the bank at that time borrowed enough money to settle the Babcock-Rushton Company brokerage account and obtained the collateral deposited with that company. She also knew prior to this time that these securities were hypothecated as collateral with the brokerage firm, because she had received payment of coupons on the identical bonds from the brokerage company and had deposited the same in her bank account with the defendant bank. She had also made entry upon her very carefully kept private records and books of the receipt of the proceeds of such coupons. The only matter in which Mrs. Clark could have been deceived at all was as to the nature of the Babcock-Rushton Company account. It appears that when the settlement was made in February, 1931, between Mrs. Clark and the bank, Pulis represented that while that account was in his own name it was in effect for the use and benefit of the Clarks. Later Mr. Pulis changed this statement and claimed that Philo D. Clark had loaned him the securities with which he collateraled the account and that the account was his personally. And this corrected statement was corroborated by the testimony of Philo D. Clark. In our view of the record it matters not who was the actual owner of this Babcock-Rushton Company account. Philo Clark personally delivered all of the securities collateraling the account, and if he had apparent or actual authority so to do, it does not matter whether such securities were a loan to Pulis or whether they were to be used by him in collateraling the account for the use and benefit of the Clarks. The loss to the Clarks would have been the same in any event, and Mrs. Clark knew the deposit had been made and the account opened at the time of the settlement in 1931, and at the prior time that she received the proceeds of the coupons from the bonds thus deposited. Mrs. Clark's testimony in reference to this matter, as well as to many other material matters and things, as shown in the record, is not at all persuasive in view of the fact that her private books and accounts kept by her had been so mutilated and erased as to many of the entries that they could not be discerned or read except some few of them which were restored through the medium of the ultraviolet X-ray. Philo Clark, without question under this record, was knowingly permitted, authorized and empowered as the agent of his wife without any limitations or restrictions to handling her various agency brokerage accounts and to do as he thought best with her securities and bonds at all times. And the

knowledge of her husband as her general agent, with unlimited authority and without restrictions, would be knowledge to her and would bind her as to all of his transactions. In this connection there were many other brokerage accounts opened and carried on in the names of both Philo D. Clark and Jessie F. Clark and practically all of such business was entrusted to and carried on by Philo Clark. However, all profits or returns from the various accounts and securities dealings went into the bank account carried in the name of Jessie F. Clark and all such profits and returns were entered by Mrs. Clark in her private books. All of the bonds and other securities owned by the Clarks during the entire period of the transactions here involved were so intermingled that it is difficult to determine whether any particular item of such securities was individually owned by either of the Clarks or whether owned jointly by them. Dividends and profits from securities claimed to have been owned by Philo were deposited in the bank account carried in the name of Mrs. Clark and were entered in her personal books and recorded as her personal income. It should be noted that Mrs. Clark was not a woman unfamiliar with business and business transactions. She had been interested in and carried on investment and speculative business dealings for some eight or ten years for herself, for her father, and in connection with similar joint dealings and enterprises with her father, her husband and her daughter, Frances. She had kept a very legible and accurate account of all such transactions and business dealings, and had her private books and accounts not been mutilated, changed, and erased, apparently for the purposes of this record, such books and accounts would have furnished an accurate and intelligent record of all such dealings and transactions and would have shown Mrs. Clark's knowledge and familiarity as to all such transactions.

The trial court correctly found and held, in effect, that Jessie F. Clark is here complaining of and attempting to obtain damages on account of dealings known about and approved by her through a long period of years; that she was not the victim of fraud or any wrong doing as to any of the transactions involved in this action, but with full knowledge of the entire transactions she acquiesced in and ratified all and every act of her husband acting for her or for their joint profit and benefit in all of the transactions involved. And, under this record, it must be held that all of the acts now complained of were the acts of her

husband, either acting for himself or the joint account of himself and wife, or as his wife's general and authorized agent, and in the latter event acting within the scope of his actual, ostensible, implied, and apparent agency for his wife.

Early in February, 1931, after the happening of all of the events and things complained of by plaintiff and at a time when she had full knowledge and information as to all of such matters and things she entered into a full accounting and settlement with the defendant bank on her own volition, and after full investigation, consultation and advice with her trusted and competent personal friends and representatives, Mr. and Mrs. Carey. The only excuse that is offered by Mrs. Clark in her attempted repudiation of the settlement is that at that time it was represented to her, and she understood, that the so-called Pulis account with Babcock-Rushton Company was in fact an account opened by her husband as many other similar accounts had been opened and continued, and that it was not the account of Mr. Pulis. As we have indicated heretofore, Mrs. Clark knew of the existence of that account, knew of the deposit of the collateral thereto by her husband, and the resulting loss would have been the same no matter what the actual character of the account. In other words, there was no deceit, concealment, or misrepresentation at the time of the settlement in February, 1931, that in any way affected the financial or pecuniary situation of Mrs. Clark.

We are constrained to hold that the district court was in error in finding and decreeing a liability upon the part of the defendant bank by reason of the violation of any fiduciary relation or by reason of any concealment or misrepresentation as to the Pulis account transaction. We omit any adjudication or pronouncement as to the liability of Mrs. Clark to the bank on the balance due upon her promissory notes held by it.

The case will be reversed on appellee's appeal as to the Pulis item and as to the order apportioning the costs, and will be remanded for the purpose of entering a judgment and decree, in conformity with this opinion, dismissing the plaintiff's cause of action with judgment for costs against her.—Affirmed on plaintiff's appeal; reversed on defendant's appeal.

HAMILTON, C. J., and MITCHELL, PARSONS, SAGER, DONEGAN, and STIGER, JJ., concur.

RICHARDS, J., takes no part.